IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SERGIO L. SHAW,

                                                                        OPINION and ORDER

             Plaintiff,

                                                                           08-cv-245-bbc

    v.

THOMAS JAHNKE, Dodge
Correctional Officer,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case, plaintiff Sergio Shaw is proceeding on a claim against defendant Thomas Jahnke for an alleged excessive use of force. Before the court is defendant's motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Defendant's motion raises questions that are becoming increasingly common in this court regarding the relationship between the Wisconsin Department of Corrections' inmate complaint review system and the disciplinary review process.

Before discussing the merits of defendant's motion, I must address its procedural posture. Defendant filed his motion on February 27, 2009, the same day that the court

1

mailed a briefing schedule to plaintiff at the Columbia Correctional Institution, where plaintiff had been housed up until that point.  On March 4, the briefing schedule was returned to the court with a stamp stating "Addressee Unknown" and "No FWD Address."  Dkt. #27.  Neither plaintiff nor counsel for defendant had informed the court that plaintiff had been transferred to a different institution.

On March 6, this court sent plaintiff a new briefing schedule and directed counsel for defendant to re-serve plaintiff at what the court believed was his new address at the Wisconsin Resource Center.  Dkt. #28.  When plaintiff missed his March 26 deadline for responding, defendant filed a "reply" brief in which he argued that his "filings in support of its [sic] motion should be deemed undisputed and summary judgment granted as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure."  Dkt. #31.

Generally, a plaintiff's failure to respond to a motion seeking dismissal of the case suggests that the plaintiff is no longer interested in litigating his suit.  However, in this case, plaintiff's failure to respond may be the result of his not receiving a copy of defendant's motion.  A review of the Department of Corrections' internet inmate locator shows that plaintiff is back again at the Columbia Correctional Institution and not at the Wisconsin Resource Center.  Columbia staff has confirmed over the telephone that plaintiff was housed at the Wisconsin Resource Center for a short time only and that he has since been returned to Columbia.

2

It is not clear why neither plaintiff nor counsel for defendant has kept the court apprised of plaintiff's whereabouts. Of course, it is primarily plaintiff's responsibility to notify the court when he is moved. However, because his transfer was only temporary, plaintiff may have believed that any mail he received at Columbia would be kept there until he returned. Counsel for defendant does not say whether she checked on plaintiff's location to determine whether plaintiff had received the motion.

In any event, I need not decide whether plaintiff is entitled to another extension of time. Even without a response from plaintiff, defendant's motion for summary judgment must be denied because defendant has failed to meet his burden to show that plaintiff has not exhausted his available administrative remedies.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. The purpose of

3

these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006).

According to defendant, plaintiff attempted to file a grievance about defendant's alleged use of force *three* times, but each time the grievance was rejected. The first time was on July 24, 2007, four days after the alleged use of force. (The copy of the grievance that defendant provided is nearly illegible, but defendant seems to concede that the content of the grievance related to the use of force. The precise language plaintiff used is not relevant to resolving defendant's motion.) The inmate complaint examiner summarized plaintiff's grievance under the heading, "Complains about an incident in which he received Conduct Report #1880795 from Officer T. Jahnke." The examiner then rejected the grievance because

> [t]he disciplinary hearing on this situation has yet to take place. It is not within the scope of the inmate complaint review system to investigate circumstances leading up to a conduct report and then determine whether or not that report should have been written. It is, however, one of the duties of the disciplinary committee, and the complainant will have the opportunity to present any defense at that time.

Gozinske Aff., exh. C, dkt. #25-2.

On August 6, plaintiff filed a second grievance in which he complained about defendant's use of force. This time the examiner summarized the grievance as "Inmate complains he was improperly treated by Officer Janke [sic] at DCI" and rejected the complaint under Wis. Admin. Code § 310.11(5)(g) because "[t]he issue raised in this

4

complaint has been addressed through the inmate's prior use of the" inmate complaint review system. Id., exh. D. (The examiner did not identify how or when petitioner's grievance had been "addressed," but defendant's position is that the examiner viewed the first and second grievances as raising the same issue.)

Finally, on August 21, plaintiff filed a third grievance about the "excessive use of force" by defendant, which was rejected because "the inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint," citing Wis. Admin. Code § DOC 310.11(5)(d). The examiner did not refer to the first two grievances that plaintiff filed or the reasons they were rejected.

It is difficult to reconcile these decisions. In the first one, the examiner seems to suggest that plaintiff should not file a grievance about defendant but instead should raise the issue in the context of the disciplinary proceedings; in the second decision, the examiner suggests that petitioner did not need to file a grievance because the matter had been resolved previously in some manner; and in the third decision the examiner concludes that plaintiff waited too long to file his grievance even though he *had* filed a grievance almost immediately after the incident. Any prisoner who received these three decisions would be left scratching his head wondering what they meant and which decision he should follow.

The examiner did not cite a rule or regulation in his first decision, but defendant says that the examiner relied on Wis. Admin. Code § DOC 310.08(2)(a), which prohibits a

5

prisoner from filing a grievance about "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process." Thus, defendant says, the first grievance was rejected because plaintiff "had not yet exhausted the review process applicable to the conduct report he had received in this incident." Dft.'s Br., dkt. #24, at 7.

To the extent defendant means to argue that plaintiff filed his first grievance too soon, the argument has multiple problems. Any application of § DOC 310.08(2)(a) must be read in conjunction with § DOC 310.08(3), which says that, even after the disciplinary appeal process is finished, a prisoner may file a grievance only with respect to the *procedure* used during the disciplinary process. Because plaintiff's grievance did not raise a procedural issue, § DOC 310.08(3) suggests that he could not use the grievance process *at all* for the purpose of complaining about defendant's use of force. Madyun v. Cook, 08-cv-30-bbc, 2008 WL 4330896, *3 (W.D. Wis. May 23, 2008) (concluding that § DOC 310.08(3) prohibited prisoner from filing grievance on excessive force because issue was related to conduct report and prisoner had raised it during disciplinary proceedings).

This view is supported by the examiner's first decision, in which he directed plaintiff to raise his complaint before the disciplinary committee; he did not tell plaintiff to file a new grievance once the disciplinary process is finished. It is supported by the second decision as well, in which the examiner appears to be saying, "We already told you that your complaint should be addressed before the disciplinary committee. Don't come back." Certainly, the

6

second decision is vague enough that it is open to interpretation. Defendant does not identify an alternative reading that would be more favorable to his position. Under any reading, the connotation is that the examiner will not consider any additional grievances on the same issue.

If plaintiff's grievance fell outside the inmate complaint review system, whether plaintiff filed an inmate complaint is irrelevant to determining whether plaintiff complied with § 1997e(a). Rather, the important inquiry would be whether plaintiff raised the issue at his disciplinary hearing and filed any necessary appeals of the disciplinary decision under Wis. Admin. Code § DOC 303.76. Defendant adduces no evidence on this question and does not discuss it in his brief. Because defendant has the burden to prove that plaintiff did not exhaust his administrative remedies, <u>Jones v. Bock</u>, 549 U.S. 199 (2007), this failure would require that defendant's motion for summary judgment be denied.

The issue is confused somewhat by Wis. Admin. Code § DOC 303.76(7)(d), which says that "[t]he warden's decision [on an appeal of a disciplinary matter] is final regarding the sufficiency of the evidence. An inmate may appeal procedural errors as provided under s. DOC 310.08 (3)." This provision is ambiguous because it does not address the entire universe of issues that might be raised at the disciplinary hearing. What should a prisoner do with an issue that is not procedural *or* a challenge to the sufficiency of the evidence? Because the warden's decision is "final" with respect to "the sufficiency of the evidence"

only, this leaves room for an argument that it may *not* be final with respect to any other substantive issue that is "related to [the] conduct report" within the meaning of § DOC 310.08(2)(a). This ambiguity in the regulations is a problem because prisoners may not have sufficient guidance on the appropriate course of action. Westefer v. Snyder, 422 F.3d 570, 580 (7th Cir. 2005) (when prison officials fail to "clearly identif[y]" proper route for exhaustion, they cannot later fault prisoner for failing to predict correct choice).

     I need not attempt to resolve the ambiguity raised by §§ DOC 310.08 and 303.76 in this case. Even if the regulations permitted plaintiff to file a grievance at the conclusion of the disciplinary proceedings, it would not be appropriate to grant defendant's motion. First, plaintiff was entitled to rely on the examiner's first two decisions, in which the examiner told him that he could not file a grievance on defendant's use of force. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (dismissal not appropriate when prisoner failed to complete grievance process because of misinformation provided by prison officials). Second, even if, in the first two decisions, the examiner meant to say, "Come back after you're done with the disciplinary process," this would make the examiner's third decision (rejecting plaintiff's grievance as untimely) nonsensical. The department cannot make prisoners wait to file a grievance until the disciplinary process is finished and then reject as untimely a grievance filed less than two weeks later. That would be the clearest example of a failure to provide the prisoner with an "available" remedy within the meaning of § 1997e(a).

For the most part, defendant fails to address the inconsistencies in the examiner's decisions. Instead, defendant seems to argue that plaintiff did not comply with § 1997e(a) because he did not *appeal* the rejections of his grievances to the warden as he could have under Wis. Admin. Code § DOC 310.11(6). Dft.'s Br., at 7, dkt. #24 ("Shaw failed to appeal any one of these three rejected complaints to the warden as required by DOC 310.11 (6). Therefore, Shaw did not exhaust his administrative remedy as to these complaints.") (record citation omitted).

Defendant does not explain his position further. Does he mean to concede that one or more of the examiner's decisions *were* wrong and that the error could have been discovered had plaintiff challenged it? Or does he mean to say that regardless whether the examiner was wrong, plaintiff should not have accepted the examiner's conclusion that his grievances were filed improperly?

Whatever defendant means to argue, it cannot carry the day for him. If the examiner was right when he rejected plaintiff's grievance on the ground that it raised an issue that should be presented to the disciplinary committee, it would not matter for the purpose of determining exhaustion whether plaintiff had appealed that rejection. The question would be whether plaintiff followed the examiner's instructions, a question that defendant does not address. Similarly, plaintiff would have had no reason to appeal the decision in which the examiner concluded that plaintiff's issue had been "addressed" previously. Although the

9

examiner's decision is ambiguous, the examiner either was repeating his previous conclusion that plaintiff's issue was outside the scope of the grievance process or was otherwise telling plaintiff that he believed plaintiff's issued was already resolved, which would mean that plaintiff was finished with the grievance process.

Perhaps plaintiff could have tried to appeal the examiners' decisions that his grievance had been "addressed" previously and his third grievance was untimely. However, in light of the ambiguity of the regulations and the mixed messages sent by the examiners, I cannot conclude that plaintiff was required to do so. The grievance process is not intended to be a game of "gotcha" or "a test of the prisoner's fortitude or ability to outsmart the system." Vasquez v. Hilbert, 07-cv-723-bbc, 2008 WL 2224394, *3 (W.D. Wis. May 28, 2008). Rather, it is meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation. Porter Nussle, 534 U.S. 516, 524-25 (2002); Strong v. David, 297 F.3d 646 (7th Cir. 2002). Plaintiff gave prison administrators at least three chances to address his grievance, but they rejected his attempt each time. Thus, this is not a case in which the prisoner is failing to provide proper notice or brazenly disregarding prison rules. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006)(dismissal for prisoner's failure to "properly" exhaust is necessary to "discourag[e] disregard of the agency's procedures"). It is a case in which it appears that even the prison administrators themselves do not know what plaintiff needed to do to complete the exhaustion process successfully.

"In determining whether a particular remedy was 'available' to a prisoner who failed to exhaust, the Court of Appeals for the Seventh Circuit has held that the key question is whether the prisoner or an official was at fault for the failure to complete the grievance process properly." Romanelli v. Suliene, No. 3:07-cv-19-bbc, 2008 WL 4587110, *5 (W.D.Wis. Jan. 10, 2008) (citing Kaba v. Stepp, 458 F.3d 678, 684-87 (7th Cir. 2006)). In other words, when a prisoner fails to complete the grievance process because of an error by the prison officials, his suit is not subject to dismissal for failure to exhaust. For example, in Dole v. Chandler, 438 F.3d 804, 809-10 (7th Cir. 2006), prison officials never responded to a prisoner's grievance because they lost it. When the prisoner filed a federal lawsuit, the defendants argued that the case should be dismissed for the prisoner's failure to exhaust because he could have filed another grievance. The court flatly rejected this argument, concluding that the prisoner had "already given the prison administrative process an opportunity to resolve his complaint" and "the misstep . . . was entirely that of the prison system." Id. at 810. See also Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir. 2002) (administrative remedies unavailable when prison officials erroneously told prisoner that he must wait until investigation was complete before filing grievance) (cited with approval in Kaba, 458 F.3d at 684).

The same result is appropriate here. It was the department's misinformation rather than any negligence or manipulation on plaintiff's part that prevented plaintiff from

11

completing the grievance process, to the extent he was even required to do so.  Defendant may not benefit from the department's failures.  Perhaps plaintiff could have done more, but he did all he could have been reasonably expected to do under the circumstances

The department's responses to plaintiff's grievances and defendant's position in this case suggest that there may be a problem regarding the interpretation and application of the grievance rules.  In recent months, other cases suggest that the department, the attorney general's office or both are confused about the meaning of the regulations on exhaustion, particularly with respect to issues that overlap with disciplinary proceedings.  E.g., Vasquez, 2008 WL 2224394 (examiner had rejected grievances that prisoner filed related to use of force because issue was related to conduct report and thus fell outside scope of grievance system; although defendants believed that examiner was wrong to reject grievance under Wis. Admin. Code § DOC 310.08(3), they argued that prisoner should be blamed for failing to convince administrators of their error); Madyun, 2008 WL 4330896 (prisoner did not file grievance after completing disciplinary process on related conduct report; defendant argued that prisoner's case should be dismissed for failing to file grievance).

These cases suggest that the department might consider amending the regulations to clarify the scope of the grievance process as it relates to the disciplinary process.  If even complaint examiners and lawyers are having difficulty navigating the rules, it is likely that many prisoners are as well.  Although it appears that the regulations were amended several

12

years ago to address specific concerns identified in <u>State ex rel. Smith v. McCaughtry</u>, 222 Wis. 2d 68, 74, 586 N.W.2d 63, 66 (Ct. App. 1998), regarding the relationship between the disciplinary process and the inmate complaint review system, much uncertainty remains, as this case shows.

Although defendant's motion for summary judgment must be denied, there remains a question whether he still wishes to pursue this lawsuit. Accordingly, plaintiff may have until April 28, 2009, to inform the court in writing whether he intends to proceed with the litigation. If he does not respond by that date, I will dismiss the suit for his failure to prosecute. Counsel for defendant is requested to confirm that plaintiff is housed at the Columbia Correctional Institution (and will be for at least the next few weeks) and to inform the court if she learns otherwise.

## ORDER

IT IS ORDERED that

1. Defendant Thomas Jahnke's motion for summary judgment, dkt. #23, is DENIED.

2. Plaintiff Sergio Shaw may have until April 24, 2009, to inform the court in writing whether he wishes to proceed with the case. If he fails to respond by that date, I will dismiss

13

his case for his failure to prosecute.

Entered this 14th day of April, 2009.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

14